IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 10-mc-24539-MGC

In Re: ARBITRATION OF:
FREECHARM LIMITED V. ATLAS
ONE FINANCIAL GROUP, LLC, et al.,
FINRA Case No. 09-01002

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT/CROSS-PETITIONER FREECHARM LIMITED'S RESPONSE IN OPPOSITION TO PETITIONERS/CROSS-RESPONDENTS' MOTION FOR CONFIRMATION OF ARBITRATOR'S AWARD AND ENTRY OF FINAL JUDGMENT, AND CROSS-MOTION TO VACATE OR MODIFYARBITRATOR'S AWARD AND FOR <u>ORDER STAYING ENFORCEMENT OF ARBITRATOR'S AWARD</u>**

# TABLE OF CONTENTS

PAGE(S)

PRELIMINARY STATEMENT………………………………………………………..1

STATEMENT OF THE CASE AND OF THE FACTS………...............................................2

A.  FINRA Arbitration Hearing and Arbitration Award…………………………..3

B.  Fraudulent Manipulations and Alterations to Account Forms and Investment
    Objectives Disregarded By The Panel………………………………...………….3

C.  Each and Every One of Respondents' Multiple Explanations for
    the Unauthorized Manipulations of Freecharm's Account Forms is
    Disposed of by Freecharm at the Arbitration Hearing…………………………5

D.  Withholding of Documents to the Prejudice of Freecharm…………………….7

E.  Misleading Hedge Fund Sales Material…………………………………………10

F.  Contradicting Testimony Regarding Freecharm's Account Objectives………10

G.  Unrebutted Testimony of Mr. Duclaud Regarding Conversations
    with Former Atlas One Employees………………………………………………11

H.  Evidence Presented by Freecharm on Unauthorized Trading…………………12

I.  Unrebutted Expert Testimony Proffered by Freecharm………………………13

ARGUMENT……………………………………………………………………………….15

A.  **Grounds For Vacating An Arbitration Award Under 9 U.S.C. § 10(a)**…..15

    i)   The Arbitration Panel Exceeded Its Powers…...……………………16

    ii)  A Manifest Disregard Of the Facts and the Law Is
         An Appropriate Grounds For Vacating An Arbitration
         Award Where The Arbitrators Have Exceeded Their Power…………18

    iii) The Arbitrators Exceeded Their Powers and the Arbitration
         Award Was Entered In A Manifest Disregard Of the Facts
         and the Law…..……..….....................................................................21

    iv)  Evident Partiality Or Bias Existed On The Part of Some or
         All of the Arbitrators……………………………………………………..24

i

PAGE(S)

v)    Freecharm Was Prejudiced In The Arbitration By The Respondents
      Egregious Withholding Of Material Documents In Discovery………..25

vi)   This Court May Review Evidence That Would Support
      Freecharm's Motion To Vacate……………………………………..26

B.    **Confirming The Award Would Validate Fraud And Therefore
      Is Contrary To Public Policy**…………………………………….……….**27**

C.    **Grounds For Modifying An Arbitration Award Under 9 U.S.C.  § 11**……**29**

**CONCLUSION**…………………………………………………………….………**29**

# **TABLE OF CONTENTS**

## C<small>ASES</small>

P<small>AGE(S)</small>

1. *Alabama Title & Trust Co. v. Millsap*, 71 F.2d 518 (5th Cir., Ala. 1934)…………………..23

2. *Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir.1985)…….24

3. *Arthur Young & Co. v. Mariner Corp.,* 630 So.2d 1199, 1203 (Fla. 4th DCA 1994)………28

4. *B.L. Harbert Intern., LLC v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. (Ala.) 2006)……22

5. *Citigroup Global Markets Inc. v. Bacon,* 562 F.3d 349, 350, 355 (5th Cir.2009)………….19

6. *Coffee Beanery, Ltd. v. WW, L.L.C.,* 300 Fed.Appx. 415, 418-19 (6th Cir.2008)………….20

7. *Comedy Club, Inc. v. Improv West Assoc.,* 553 F.3d 1277 (9th Cir. 2009)………………....20

8. *Fitzgerald v. H&R Block Financial Advisors, Inc.*, No. 08-10784, 2008 WL 2397636
   (E.D. Mich. June 11, 2008)………………………………………………………………20

9. *The Florida Bar v. Clement*, 662 So.2d 690 (Fla., 1995)…………………………………..23

10. *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313 (11th Cir. (Ala.) 2010)…………….19

11. *Gianelli Money Purchase Plan and Trust v. ADM Investor Services, Inc.*, 146
    F.3d 1309 (11th Cir. Fla., 1998)………..……………………………………………….25

12. *Grigsby & Associates, Inc. v. M Securities Inv., Inc.*, Not Reported in F.Supp.2d,
    2008 WL 2959730 (S.D.Fla. 2008)………………………………………………………27

13. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)………………………18

14. *Hardy v. Walsh Manning Securities, L.L.C.*, 341 F.3d 126, (2d Cir. 2003)………………..24

15. *Izquierdo v. Gyroscope, Inc.*, 946 So.2d 115 (Fla. 4th DCA 2007)………………….....23

16. *Jimmy John's Franchise, LLC v. Kelsey*, 549 F. Supp. 2d 1034 (C.D. Ill. 2008)…………21

17. *Kashner Davidson Sec. Corp. v. Mscisz*, 601 F.3d 19, 22-23 (1st Cir.2010)…………….21

18. *Kostoff v. Fleet Securities, Inc.*, 506 F.Supp.2d 1150 (M.D.Fla. 2007)…………………..22

19. *Major League Baseball Players Assn. v. Garvey,* 532 U.S. 504, 509 (2001)…………….17

**PAGE(S)**

20. *Mehl v. Office of Financial Regulation*, 859 So.2d 1260 (Fla. 1st DCA 2003)…………...28

21. *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456 (11th Cir. (Fla.) 1997)………….18

22. *O.R. Sec. v. Professional Planning Assocs.*, 857 F.2d 742 (11th Cir.1988)……………….27

23. *Pebbles v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 431 F.3d 1320
    (11th Cir.2005)……………………………………………………………………………………27

24. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)………………17

25. *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S.Ct. 1758 (2010)………..…16

26. *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 548 F.3d 85 (2d Cir.2008)……………………19

27. *Republic Nat. Bank of Miami, N.A. v. Roca*, 534 So.2d 736 (Fla. 3d DCA 1988)……........23

28. *Rintin Corp., S.A. v. Domar, Ltd.*, 476 F.3d 1254, 1258 (11th Cir.2007)…………………27

29. *Roberson v. Charles Schwab & Co., Inc.*, 339 F.Supp.2d 1337 (S.D.Fla. 2003)…………23

30. *Robson Link & Co. v. Leedy Wheeler & Co.*, 18 So. 2d 523, 531 (Fla. 1944)……………28

31. *Rutledge v. City of Miami*, 267 F.Supp. 885 (S.D.Fla.1967)……………………….......23

32. *United Paperworks Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29,
    108 S.Ct. 364 (1987)……………………………………………………………………..27

33. *University Commons-Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F.3d 1331
    (11th Cir. 2002)…………………………………………………………………………22

34. *Wilko v. Swan*, 346 U.S. 427 (1953)…………………………………………………...18

## RULES AND STATUTES

9 U.S.C. § 10(a)………………………………………………………………..15-16

    9 U.S.C. § 10(a)(2)……………………………………………………….25

    9 U.S.C. § 10(a)(3) …………………………………………………26-27

**PAGE(S)**

9 U.S.C. § 10(a)(4) ……………………………………………………………17

9 U.S.C. § 11……………………………………………………………...29

   9 U.S.C. § 11(b) ………………………………………………………29

FINRA Code of Arbitration, Rule 12904(f) ………………………………………..23

FINRA Code of Arbitration Procedure, Rule 12212…………………………………26

FINRA Code of Arbitration Procedure, Rule 12511………………………………26

Fla. Stat. §§ 682.13, 682.14……………………..…………………………………16

Respondent/Cross-Petitioner, Freecharm Limited ("Freecharm"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§9 – 12, opposes Petitioners/Cross-Respondents', Atlas One Financial Group, LLC ("Atlas One"), Atlas One Capital Management, LLC ("Atlas Capital"), Gustavo Hegewisch ("Hegewisch"), Jorge Garcia-Garcia ("Garcia"), and Flavio Lobato ("Lobato") (collectively "Petitioners/Cross-Respondents") Motion for Confirmation of Arbitrator's Award and Entry of Final Judgment and files its Cross-Motion to Vacate or Modify Arbitrator's Award rendered on December 17, 2010, in the arbitration entitled <u>Freecharm Limited v. Atlas One Financial Group, LLC, Atlas Wealth Holdings Corporation, Atlas One Capital Management, Inc., Gustavo E. Hegewisch, Jorge Garcia-Garcia, and Flavio A. Lobato</u>, FINRA Case Number 09-01002 (the "Arbitration Proceeding").

### PRELIMINARY STATEMENT

Freecharm presented clear and unequivocal law and substantial evidence and testimony over eight days of arbitration proceedings to prove its claims that in connection with the sale and purchase of securities and the management of its investments, Respondents committed numerous misrepresentations and omissions of material facts, fraud, violations of Florida Blue Sky securities laws, and negligent supervision.  Notwithstanding the law and governing industry rules presented by Freecharm, before and during the Arbitration Proceedings, the arbitration Panel dismissed Freecharm's claims in their entirety and provided no rationale for the award.  In doing so, the Panel clearly exceeded its powers and acted in a manifest disregard of the law.

This Motion is <u>not</u> an attempt by Freecharm to re-litigate the merits of its case.  The Panel's award is simply not supported by the evidence at the arbitration, as discussed herein, and confirming this award as it is would be an unfortunate travesty of justice.  Respondent/Cross-Petitioner Freecharm urges this Court to consider the arguments set forth herein and the

transcripts of the underlying Arbitration Proceeding (to be filed separately with the Court), and vacate or modify the Award to reach a just and proper result.

## STATEMENT OF THE CASE AND OF THE FACTS

Freecharm is a trust structure incorporated in Ireland, established in approximately 2004 by its settlor, Jose Antonio Duclaud.  Mr. Duclaud appointed Pearse Trust International Limited ("Pearse") and its affiliated companies as the trustee of the Freecharm trust.  In February 2009, Freecharm filed an arbitration action in the Financial Industry Regulatory Authority (FINRA) against Atlas One Financial Group, LLC ("Atlas One"), a broker-dealer that introduced and opened an investment account for Freecharm to clearing brokerage Pershing LLC, and maintained a relationship with Freecharm and Mr. Duclaud through one of its account executives, Gustavo Hegewisch, since mid 2003.  Also named as Respondents in the arbitration action were Mr. Hegewisch, the affiliate Atlas One, hedge fund-managing company Atlas One Capital Management, LLC ("Atlas Capital"), the co-directors of Atlas Capital, Jorge Garcia-Garcia and Flavio Lobato, and the corporate parent of Atlas One and Atlas Capital, Atlas Wealth Holdings Corporation (the parties shall be referred to collectively as the "Respondents" for purposes of discussion of the underlying Arbitration Proceedings).  In responding to Freecharm's Statement of Claim, named-Respondent Atlas Wealth Holdings Corporation informed FINRA that since it was not a FINRA member, it was not subject to FINRA's jurisdiction and would not voluntarily submit to the jurisdiction of the FINRA arbitration Panel.[1]

---

[1] Atlas Wealth Holdings Corporation maintained its position throughout the arbitration proceedings.  Prior to the second set of arbitration hearings, Freecharm filed an action against Atlas Wealth Holdings Corporation in Florida state court, and in the action named as defendants officers and directors of Atlas Wealth Holdings Corporation, Daniel Kalb, Jorge Kalb, and Paul D. Weiss.  This case is currently pending before the Eleventh Circuit Court, in and for Miami-Dade County, Florida, Case No. 10-61372 CA 32.

In its Statement of Claim, Freecharm set forth causes of action for: (1) violations of Chapter 517, Florida Statutes; (2) fraud; (3) breach of fiduciary duty; (4) gross negligence, and negligent supervision.  In their Answer to the Statement of Claim ("Answer"), the Respondents denied all allegations set forth in the Statement of Claim and set forth various affirmative defenses.

Prior to the commencement of the arbitration hearing, Freecharm filed a Pre-Hearing Brief discussing the applicable law as to the asserted causes of action.  See *Claimant's Pre-Hearing Brief*, attached hereto as **Exhibit A**.  Respondents did not file an opposing brief.

## A.      FINRA Arbitration Hearing and Arbitration Award

Freecharm's claims against Atlas One and the other Respondents were submitted to an eight-day arbitration hearing that was split among two separate weeks—one week in September 2010 and the week in December 2010.  The arbitration hearing was held before a three-person FINRA panel composed of two non-lawyers and one lawyer; two public arbitrators and one non-public, or industry, arbitrator.

On December 17, 2010, FINRA issued the Panel's Award.  In it, the Panel states simply that "Claimant's claims are denied in their entirety. . . . Each party shall bear their own costs and attorney's fees. . . . Any and all claims for relief not specifically addressed herein, including Claimant's request for punitive damages and Claimant's claims for relief for violation of Chapter 517 of the Florida Statutes, are denied."  *See Arbitration Award*, a true and correct copy of which being attached hereto as **Exhibit B**.  No rationale was provided for the Panel's decision.

## B.      Fraudulent Manipulations of and Alterations to Account Forms and Investment Objectives Disregarded by the Panel

Freecharm's causes of action related to unauthorized trading, unsuitable investments, excessive trading, excessive margin trading, and several misrepresentations and omissions that

were made by the Respondents.  In addition, Freecharm originally withheld including in its Statement of Claim what were alleged to be manipulated or altered account forms obtained by the Freecharm trustee, Pearse, directly from Atlas One prior to the commencement of the action. *See Statement of Claim*, attached hereto as **Exhibit C**.  The original account forms signed by the appropriate representative of Pearse in April 2004, had selected "Account Objectives" of "Long-Term Growth" and "Risk Exposure" of "Moderate," parameters indicative of Freecharm's selected conservative to moderate investment profile.  However, the account forms obtained by the Freecharm trustee in December 2008, included among them two additional pages, the page containing the "Account Objectives" and "Risk Exposure" of the account and the signature page of the account.

On this second set of account forms, "Account Objectives" were changed to "Short-Term Growth" and "Risk Exposure" was changed to "Speculative," reflecting a change to a riskier account profile.  The signature page bore a date of October 18, 2005, yet it was not signed. These two pages of the account forms had never before been seen by the Freecharm trustee or Mr. Duclaud.  Moreover, the page containing the "Account Objectives" and "Risk Exposure" showed what appeared to be deletions and manipulations of the form, including the whiting-over of the "Account Objectives" and "Risk Exposure" check boxes.  Even more troubling was a second version of the allegedly altered page containing the "Account Objectives" and "Risk Exposure" that was produced by the Respondents during discovery (seemingly by mistake) that showed an attempt to crudely redraw the "Account Objectives" check box by hand.

Freecharm moved for leave to file an Amended Statement of Claim to include allegations regarding the manipulated account forms.  *See Amended Statement of Claim*, attached hereto as **Exhibit D.**   In their Amended Answer to the Amended Statement of Claim ("Amended

Answer"), the Respondents denied all allegations set forth in the Amended Statement of Claim and set forth various affirmative defenses.  *See Answer*, attached hereto as **Exhibit E**, and *Amended Answer*, attached hereto as **Exhibit F**.

Freecharm presented evidence at the arbitration hearing, by way of testimony of Mr. Duclaud and the Director of Pearse, to show that these account forms had never been provided to Mr. Duclaud or Pearse, and argued that the account forms represented an attempt by Atlas One and the Respondents to fraudulently alter the account forms to reflect a higher risk profile of the account, in order to cover up their wrongdoing and trading in unsuitable financial products. Faced with these serious allegations of fraud, the Respondents presented no evidence whatsoever to rebut the allegations and supporting evidence that the account forms were manipulated or altered, to show that they ever provided a copy of this account form previously to Mr. Duclaud or to Pearse, to prove that Mr. Duclaud or Pearse were ever made aware of a change to Freecharm's investment objectives as required by FINRA and Securities and Exchange Commission (S.E.C.) rules, or to prove that Mr. Duclaud or Pearse had any notice of this document or account objective change whatsoever.

The arbitration Panel did not even address this outrageous violation of Florida and Federal law, and industry rules in the Award.

>    **C.     Each and Every One of Respondents' Multiple Explanations for the Unauthorized Manipulations of Freecharm's Account Forms is Disposed of by Freecharm at the Arbitration Hearing**

Despite never having provided Mr. Duclaud or Freecharm with notice of the account form changes, it was always the Respondents' position, as set forth in their Answer and Amended Answer, that the change in Freecharm's account objectives was the outcome of a discussion that occurred between Mr. Duclaud and Mr. Hegewisch in 2005, when Mr.

Hegewisch traveled to Vancouver, Canada to meet with Mr. Duclaud, where he then resided. Respondents alleged that this meeting occurred in 2005 in order to coincide with the October 18, 2005 date on the manipulated account form.  Respondents alleged that Mr. Duclaud expressly authorized Mr. Hegewisch to change the account forms when he in fact had not.  Moreover, Mr. Duclaud knew from his own records that he had never met with Mr. Hegewisch in Vancouver in 2005.

In order to be able to counter these false claims at the arbitration hearing, Freecharm requested a copy of Mr. Hegewisch's passport to determine when Mr. Hegewisch did travel to Vancouver.  In response to Freecharm's first request for Mr. Hegewisch's passport, Respondents replied that the requested passport had expired and was required to trade the expired passport in to obtain a new one, and was no longer in possession of it.

When Freecharm renewed its request for Mr. Hegewisch's passport and asserted that the meeting in Vancouver had occurred on February 23, 2006 (four months after the date on the manipulated account forms), Respondents admitted that the Vancouver meeting had not occurred in 2005.  Forced to fabricate another explanation for the unauthorized manipulation of the account forms, exactly one month before the hearing was to begin Respondents produced telephone records showing two telephone calls between Mr. Hegewisch and Mr. Duclaud on October 18, 2005 and asserted that the Freecharm account objectives were changed as a result of these phone calls.

At the arbitration hearing, Freecharm introduced into evidence email communications that demonstrated exactly what the subject of the October 18, 2005 phone calls was—a telephone conference that included Mr. Hegewisch, Mr. Duclaud and the trustee of Freecharm's predecessor trust structure, the ISHU Partnership, regarding the closing of that structure and the

logistics of transferring the assets of that trust, which also held an account at Atlas One, to Freecharm's account.  The emails introduced by Freecharm, dated before and after the date and time of the telephone conference, confirmed the time of the telephone conference, the participants, the subjects discussed, and the decisions made in the telephone conference.  As proven by Freecharm, the October 18, 2005 telephone calls were not a discussion between Mr. Hegewisch and Mr. Duclaud discussing a change in account objectives.

The overwhelming evidence presented by Freecharm at the hearing demonstrated that when faced with a potential action by Freecharm for the losses caused in the Freecharm account due to the unauthorized trading in unsuitable investments, Respondents manipulated Freecharm's account forms to show different account objectives that they hoped would insulate them from liability.

### D.     Withholding of Documents to the Prejudice of Freecharm

The Panel also failed to consider the outright fraud, misrepresentations, and withholding of documents by the Respondents that was discovered leading up to the arbitration hearing and throughout the arbitration hearing.  In closing argument, Freecharm made reference to the Respondents' withholding of material documents, as well as the manipulated account forms discussed above, requesting that the Panel make findings as to these readily apparent episodes of misrepresentation and fraud, conduct that was in violation of state and federal laws, as well as the rules of FINRA, the S.E.C., and the financial industry.

<u>Conflicting Compliance Manuals</u>

Throughout the arbitration leading up to the arbitration hearing, the issue of Atlas One and the Respondents' change in Freecharm's account forms and investment objectives was made a prevalent issue in the case.  A week before the first session of the arbitration hearing,

Respondents produced to Freecharm a 2005 version of its Compliance Manual, which did not address Atlas One's policies and procedures regarding changes in investment objectives. In discovery, Respondents had previously produced another version of the Compliance Manual containing policies and procedures requiring that customers be informed of any changes in their investment objectives. Respondents alleged that the 2005 Compliance Manual was the one in effect when Freecharm's account investment objectives were changed, and not the one that was produced in discovery.

Freecharm moved for sanctions, asserting that the 2005 Compliance Manual was either withheld or fabricated, and the arbitration Panel ordered Atlas One to pay Freecharm sanctions in the amount of $5,000. However, Freecharm's request for a negative inference against the Respondents that the originally produced Compliance Manual, the one containing policies and procedures requiring that customers be informed of any changes in their investment objectives, was controlling was denied.

<u>Exception Reports</u>

During discovery, Freecharm requested from Respondents "all exception reports and supervisory activity reviews" and "all other documents reflecting supervision of" Freecharm's account. These documents are considered to be presumptively discoverable under the FINRA arbitration rules. In discovery, the only responsive documents produced were what Respondents referred to as "Exception Reports" for 2006 through 2007. These documents, titled "Account for Statement Review," are generated by the clearing broker, Pershing, and contain extremely relevant information about the Freecharm account and the reasons for being generated, including unusual levels of gross commissions, trades, account turnover, net worth, and other important account information.

Based on the causes of action alleged and the prevalence of unauthorized trading, excessively high equity trading on margin, and other account activity, Freecharm made specific requests to Atlas One for 2008 Exception Reports which had not been produced.  Atlas One did not reply to this specific request for these documents and Freecharm moved to compel production.  At the telephonic pre-hearing conference before the Panel's Chair, counsel for Atlas One represented that no Exception Reports existed for 2008, and the arbitration panel's chair ordered that Respondents provide a written representation that the 2008 exception reports did not exist.

Freecharm obtained a subpoena to the clearing brokerage, Pershing, requesting copies of any account forms it had for Freecharm and any exception reports generated for Freecharm's account during the relevant period of time.  After the first week of the arbitration Freecharm succeeded in compelling Pershing to produce exception reports through subpoena.  Pershing's production included the previously requested 2008 Exception Reports.

An in-person hearing was held on Freecharm's Motion for Sanctions on the withholding of these materially important 2008 exception reports, wherein Freecharm requested numerous sanctions, including a striking of the Respondents' pleadings and defenses for this second, egregious discovery violation.   At the hearing, Respondents offered the testimony of in managing partner and its compliance officer, as well as two industry experts, to support its argument that it decided to no longer rely on exception reports in the supervision of Freecharm's account because it had been "coded" as a "Pattern Day Trading Account."  The Panel denied Freecharm's motion for sanctions and chose not to penalize Respondents for their affirmative denial of the existence of the 2008 Exception Reports, when they in fact existed.

<u>Atlas Capital Operational Due Diligence Manual</u>

On direct examination of one of the Atlas Capital fund managers, Jorge Garcia-Garcia ("Garcia"), he was asked by Freecharm's counsel whether Atlas Capital maintained any policies and procedures manuals independent of that followed by Atlas One. Mr. Garcia testified that it did, and he recalled it sitting in a drawer at the Atlas Capital offices. When asked if he knew why this was not produced to Freecharm in discovery, Mr. Garcia did not know but assured it existed.

### E.    Misleading Hedge Fund Sales Material

Alleged in the Statement of Claim and Amended Statement of Claim was that Mr. Duclaud was lured to Miami, Florida on an all-expense-paid trip for a sales presentation given by Atlas One and Atlas Capital for two of its managed hedge funds (the Atlas One Global Diversified Multi-Manager Fund, Ltd. and the Atlas One Special Opportunities Fund of Funds, Ltd.), and that based on the representations made at this sales presentation, Freecharm eventually invested in both funds. Evidence was presented at the arbitration hearing showing that the sales material for both hedge funds contained misleading information, including purported positive track records spanning 52 months and 72 months, as well as inception dates, when neither fund had any history whatsoever.

### F.    Contradicting Testimony and Evidence Regarding Freecharm's Account Objectives

Respondents all along alleged that Mr. Duclaud sought higher returns in Freecharm's account and that Freecharm did not have the conservative investment profile it alleged that it had. Respondents also asserted that Freecharm's goals and risk profile were "Short-Term Growth" and "Speculative" risk. As discussed herein, Respondents alleged that this change arose from Mr. Duclaud's desire for higher returns. In line with Mr. Duclaud's desire for higher returns, Respondents asserted that opportunistic trading was undertaken in Freecharm's account,

employing short-term and speculative investments and strategies, such as structured products and day-trading.

In the Answer and Amended Answer, Respondents asserted that Mr. Duclaud was fully explained in the sales presentation and in the funds' offering memoranda that the Atlas hedge funds bore risks, and that the funds were in fact suitable for Freecharm's desired higher returns, and comprehended higher risk.  However, when asked what kind of investments the Atlas One hedge funds were, Mr. Lobato, one of the managers of the two funds, testified that it was perfect for a long-term investor.

As evidence of another contradiction in Respondents' defense, Mr. Hegewisch was shown copies of various document referred to as a "Performance Report" that was provided often to Mr. Duclaud to show the performance of the investments in Freecharm's account.  At the top of the Performance Report in Spanish, provided were the account title, account number, and the risk profile of the account.  Next to risk profile for Freecharm's account it states "Moderate" in Spanish.  The Performance Reports introduced at the arbitration hearing were dated from as early as March 2007 through October 2008, and all showed "Moderate" as Freecharm's risk profile.  Thus, during the time Respondents alleged Freecharm's "Risk Exposure" on its account forms was selected as "Speculative," a change that was never provided to Freecharm, the documents it was sending to the settlor and beneficiary of the Freecharm trust, Mr. Duclaud, indicated that the account had a "Moderate" Risk Exposure.

### G.    Unrebutted Testimony of Mr. Duclaud Regarding Conversations with Former Atlas One Employees

At the arbitration hearing Mr. Duclaud testified from the contemporaneous notes he made in connection to the telephone conferences that he had with two former account executives of Atlas One, Mr. Arana and Mr. Becker.   He testified from the notes that these employees

informed them that the managing partners of Atlas One had placed pressure on all account executives to aggressively push their high net worth clients, such as Freecharm, into investing in the Atlas One hedge funds.

Freecharm had previously moved the Panel for the issuance of subpoenas to these two former Atlas One account executives to appear to testify at the Arbitration Hearing, which motion the Panel granted and did issue those subpoenas.  The subpoenas were served on Mr. Arana and Mr. Becker well in advance of the arbitration hearing.  However, Respondents never called either of these witnesses to rebut Mr. Duclaud's testimony as to what they revealed to him in their conversations.

### H.    Evidence Presented by Freecharm on Unauthorized Trading

At the arbitration hearing, Freecharm presented unrefuted evidence showing that the structured products and the equity day trades transacted in its account were never communicated to Mr. Duclaud or the Freecharm trustee before they were made.  Furthermore, it was shown that the amount of time that elapsed between the time a trade confirmation was sent from the clearing firm to the Freecharm trustee, who immediately communicated these documents to Mr. Duclaud, was too long for Mr. Duclaud and/or the Freecharm trustee to knowingly and consentingly ratify the trades that Mr. Hegewisch and Atlas One made without prior authorization, particularly with the day trading transactions, wherein hundreds of thousand to millions of dollars in equity shares were bought and then sold within a single day.  Since this was the only manner in which Mr. Duclaud or the Freecharm trustee could be informed of a trade, it was impossible for Freecharm to reject or unwind these transactions.

The Arbitration Respondents did not present any evidence to show that prior authorization was obtained from the Freecharm trustee and/or Mr. Duclaud before Mr.

Hegewisch and Atlas One engaged in a structured product trade or equity day trading transaction. Nor did the Arbitration Respondents show that the results of the frequent activity undertaken by Hegewisch and Atlas One in Freecharm's account on almost a daily basis were ever reported by Hegewisch to Mr. Duclaud or the Freecharm trustee. Respondents' only defense to the unauthorized trading was given through the testimony of Mr. Hegewisch, who testified that an "opportunistic trading strategy" was adopted to suit the "changed" investment objectives Mr. Duclaud sought for Freecharm's account, yet was unable to testify that prior authorization was obtained before these transactions were made.

Additionally, Respondents attempted to show that Freecharm was aware of the risks involved in trading in structured products by introducing into evidence a Structured Products Agreement that disclosed the risks involved in structured products. However, this Structured Products did not belong to Freecharm but to the account of the ISHU Partnership. Moreover, the Structured Products Agreement was dated October 17, 2005, and the allegedly manipulated New Account Form that was unsigned by the Freecharm trustee or Mr. Duclaud was suspiciously dated October 18, 2005.

## I.     Unrebutted Expert Testimony Proffered by Freecharm

At the arbitration hearing, Freecharm presented the testimony of its expert witness, who testified as to the damages caused to Freecharm's account, calculating net out of pocket losses to be in the amount of $2,817,700.47 and total rescissionary damages under Chapter 517 of the Florida Statutes, including statutory interest, to be in the amount of $11,975,327.97, as well as the cause of those damages. These damages were set forth by the arbitration panel in the Award. *See* Exhibit B.

Freecharm's expert witness testified as to the lack of any evidence indicating the true value of the two hedge fund investments managed by Atlas Capital that a substantial percentage of Freecharm's funds had been allocated to, which had been redeemed in September 2008, but that remained only partially repaid as of December 2010.  Additionally, the expert reviewed the amount of fees and commissions charged in relation to Freecharm's investments in the Atlas One hedge funds.  The commissions and fees paid to the fund's managers, the introducing broker, and the sub-managers of the underlying hedge funds (both investments were a "fund of funds," meaning that the Atlas hedge funds selected a number of hedge funds to allocate its investors' funds to), were substantial, making it insurmountable for investors like Freecharm to make any kind of a profit, particularly in light of the poor performances of both hedge funds.

Freecharm's expert witness also testified as to the high turnover ratio in the account, which measured the excessive trading engaged in by Atlas One that was unauthorized as alleged in the Statement of Claim.  Moreover, Freecharm's expert testified as to the excessive commissions earned by Atlas One and the other Respondents as a result of the alleged churning and unauthorized trading in Freecharm's account, a staggering percentage of which were undisclosed.  Throughout the arbitration, Respondents had relied heavily on the invalid defense that, as a result of the "opportunistic trading" strategy they employed for Freecharm's account, Freecharm had made a profit of over $300,000 net of commissions.  However, this purported profit was based upon the commissions disclosed on trade confirmations and on the commission runs produced by Respondents in discovery.  There were substantial undisclosed commissions earned by the Respondents in connection with several investments, particularly in connection with numerous investment vehicles referred to as "structured products" that are short-term in nature and were also traded at an alarming frequency.  These undisclosed commissions did not

- 14 -

appear on the trade confirmations that were sent to Freecharm by the clearing firm, but rather, only appeared in the sum total of commissions earned on Freecharm's account in Atlas One's internal documents.   Freecharm's expert testified as to the difference between the disclosed and undisclosed commissions earned in Freecharm's account, identifying $86,556.08 in disclosed commissions compared to the $331,885.00 that only appeared in internal documents, meaning over $240,000 in commissions earned by Respondents were undisclosed in any confirmation, statement or document provided to Freecharm.  Therefore, Respondents assertion that Freecharm benefitted from the unauthorized "opportunistic trading" strategy to the tune of $300,000 net of commissions was belied when the undisclosed commissions were factored in.

Finally, the expert testified as to the severe overconcentration of over 75% of Freecharm's assets in the Atlas One hedge funds.  Respondents did not offer any evidence to show that investing over 75% of a customer's assets, over $4.5 million, in only two financial products that are sold by Respondents' themselves, was not unsuitable or self-dealing.

Following the presentation of its expert's testimony, Freecharm rested its case. Immediately after and without calling any of their own witnesses, Respondents rested their case. **Shockingly, Respondents did not call their own expert witness to testify, after having been present throughout the entire eight days of the arbitration hearing, and Freecharm's expert's testimony remained unrebutted at the end of the hearing.**

<u>**ARGUMENT**</u>

**A.     GROUNDS FOR VACATING AN ARBITRATION AWARD UNDER 9 U.S.C. § 10(a)**

Judicial review of an arbitration award is controlled by the FAA, 9 U.S.C. §§1 – 307.

Pursuant to 9 U.S.C. § 10(a), there are four statutory grounds for vacating an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party may have been prejudiced; (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)[2].

Freecharm contends that the arbitration award should be vacated because the arbitrators exceeded their power by (1) having known the relevant legal principles, having appreciated that these principles were controlling, and nonetheless willfully flouted the governing law by refusing to apply it; (2) dismissing all of Freecharm's claims in their entirety, in light of the unrefuted, uncontroverted evidence put on by Freecharm, including but not limited to, the unrebutted testimony of its expert witness, which was a manifest disregard of the law and the facts by the arbitrators; (3) there was evident partiality in the arbitrators; and the (4) prejudice to Freecharm in the arbitrators' refusal to grant relief for the Respondents' concealment of materially important documents in discovery or to recognize such concealment.

### i)      The Arbitration Panel Exceeded Its Powers

In a 2010 case, the Supreme Court reversed the circuit court and affirmed the district court's vacatur of an arbitration award, holding that the arbitration panel had exceeded its powers under § 10(a)(4) of the FAA. *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S.Ct. 1758, 1768 (2010). The *Stolt-Nielsen* Court held that the arbitration panel, in imposing class

---

[2] The Florida Arbitration Code provides similar limitations for vacating, modifying, or correcting an arbitration award for exceeding the arbitrators' jurisdiction. Florida Statutes § 682.13 states that a court shall vacate an award where "the arbitrators or the umpire in the course of her or his jurisdiction exceeded their powers." Fla. Stat. § 682.13(1)(d). Florida Statutes § 682.14 provides that a court may modify or correct an award upon application of any party to the arbitration where the arbitrators "awarded upon a matter not submitted to them." Fla. Stat. § 682.14. A party seeking relief under either Florida Statutes § 682.13 or § 682.14 must file an application within *ninety days* after delivery of a copy of the award to the applicant. Fla. Stat. §§ 682.13(2), 682.14(1).

arbitration on parties when the arbitration agreement was silent as to class arbitration, exceeded its powers pursuant to §10(a)(4) of the FAA by imposing its own "policy choice" instead of applying applicable FAA, maritime, or state case or statutory law.  *Id*. at 1777.  The Court reasoned, "[i]t is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Id*. at 1767 (citing *Major League Baseball Players Assn. v. Garvey,* 532 U.S. 504, 509 (2001) *(per curiam)*; *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960).  "In that situation, an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [his] powers,' for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Id*.  In reaching its decision, the Court briefly considered arguments that the arbitrators exceeded their powers under the standard that the arbitrators "knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Id*. at 1768, n. 3.  However, the Court found this standard to be satisfied by the same reasons on which it based its holding.  *Id*.

The Panel in the underlying arbitration here similarly exceeded its powers in rendering the Award.  The Pre-Hearing Brief filed by Freecharm set forth relevant and applicable legal precedent.  *See* Exhibit A.  Moreover, at the Arbitration Proceedings, Freecharm presented FINRA, NASD[3], and S.E.C. rules regarding: day-trading disclosures; record-keeping and information that must be provided to customers, such as account objective changes; suitability; and required disclosures in connection with the sale of hedge funds.  Despite the unrefuted, unrebutted evidence supporting Freecharm's claims, the Panel disregarded the applicable law

---

[3] On July 30, 2007, NASD (National Association of Securities Dealers) and the New York Stock Exchange consolidated their member regulation, enforcement, and arbitration functions and became FINRA. *Source*: FINRA.

and industry rules and arbitrarily dismissed all of Freecharm's claims.  In refusing to apply the clear and unequivocal law that it knew of, appreciated as controlling, and nonetheless willfully flouted, the Panel exceeded its powers and administered is "own brand of industrial justice." *Stolt-Nielsen*, 130 S.Ct. at 1768, n. 3; *Garvey,* 532 U.S. at 509.  Accordingly, the Panel's Award in this matter is unenforceable and should be vacated pursuant to 9 U.S.C. §10(a)(4).

> ### ii)       A Manifest Disregard Of the Facts and the Law Is An Appropriate Grounds For Vacating An Arbitration Award Where The Arbitrators Have Exceeded Their Power

Until recently, all of the federal circuit courts recognized non-statutory grounds for vacatur of an arbitration award.  In the Eleventh Circuit, these non-statutory grounds allowed an arbitration award to be vacated (1) it is arbitrary and capricious, (2) if its enforcement is contrary to public policy, or (3) if it evinces a manifest disregard of the law.  *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456,1461-62 (11th Cir. (Fla.) 1997).  The U.S. Supreme Court in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) held that the grounds stated in the Federal Arbitration Act (FAA) either for vacating, or for modifying or correcting, arbitration award constitute the exclusive grounds for expedited vacatur and modification of arbitration award pursuant to provisions of the FAA.  However, the *Hall Street* Court, in considering the applicability of the "manifest disregard of the law" ground for vacating an arbitration award, a principle first set forth in *Wilko v. Swan,* 346 U.S. 427 (1953), did not conclusively decide whether this ground was among the grounds outside of the purview of § 10(a) and §11 of the Federal Arbitration Act.  *Id*. at 585.  The *Hall Street* Court reasoned

> Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them. . . .  Or, as some courts have thought, "manifest disregard" may have been shorthand for § 10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers." . . .  We, when

> speaking as a Court, have merely taken the *Wilko* language as we found it, without embellishment . . . and now that its meaning is implicated, we see no reason to accord it the significance that Hall Street urges.

*Id*. Thus, the Supreme Court, after acknowledging the prevailing confusion among the federal circuits as to the meaning of "manifest disregard," only speculated that "maybe" each of these interpretations was possible, but neglected to clarify which was correct. *Id*.

Following the *Hall Street* decision, the federal circuit courts have reached differing results in deciding whether the "manifest disregard" ground was applicable to a motion to vacate an arbitration award. In analyzing the *Hall Street* decision, the Eleventh Circuit in *Frazier v. CitiFinancial Corp., LLC* noted that "[i]n rejecting Hall Street's reading of *Wilko,* the Court appears to express disapproval of both contractual *and* judicial expansions of section 10." *Frazier*, 604 F.3d 1313, 1322, n. 8 (11th Cir. (Ala.) 2010). The *Frazier* court held that the "judicially-created bases for vacatur are no longer valid in light of *Hall* Street" and in so holding, noted its agreement with the Fifth Circuit's holding in *Citigroup Global Markets Inc. v. Bacon,* 562 F.3d 349, 350, 355 (5th Cir.2009), "that the categorical language of *Hall Street* compels such a conclusion."

However, in the more-recent decision of *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, the Supreme Court declined an opportunity to decide whether "manifest disregard" survived the *Hall Street* decision, either "as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur" in the FAA, and instead, the Court relied upon § 10(a)(4) of the FAA when it upheld the district court's vacatur of an arbitration panel's award because the panel exceeded its powers by imposing its policy choice. *See* Stolt-Nielsen, *supra*, 130 S.Ct. at 1768.

- 19 -

A variety of circuit courts have followed the varying interpretations of the "manifest disregard" ground provided by the Supreme Court in the *Hall Street* decision.  *Hall Street*, 552 U.S. at 585.  The Second and Ninth Circuits have decided to treat manifest disregard of the law not as an additional, independent non-statutory ground for vacatur, but instead **as a judicial interpretation of the district court's power under § 10(a)(4) to vacate an award** where the arbitrator "exceeded [his] powers" or "so imperfectly executed them that a mutual, final, and definite award ... was not made."  9 U.S.C. § 10(a)(4).  *See Comedy Club, Inc. v. Improv West Assoc.,* 553 F.3d 1277, 1290 (9th Cir.), *cert. denied, Improv West Assoc. v. Comedy Club, Inc.,* 130 S.Ct. 145 (2009) (concluding that "after *Hall Street,* manifest disregard of the law remains a valid ground for vacatur" because it is "shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4)"); *Stolt-Nielsen v. AnimalFeeds Int'l Corp.,* 548 F.3d 85, 94 (2d Cir.2008), *cert. granted, Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 129 S.Ct. 2793 (2009) (holding that " 'manifest disregard,' reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA, remains a valid ground for vacating arbitration awards").

The Sixth Circuit also concluded in an unpublished opinion that while *Hall Street* "significantly reduced the ability of federal courts to vacate arbitration awards for reasons other than those specified in 9 U.S.C. § 10, ... it did not foreclose federal courts' review for an arbitrator's manifest disregard of the law."  *Coffee Beanery, Ltd. v. WW, L.L.C.,* 300 Fed.Appx. 415, 418-19 (6th Cir.2008), *cert. denied, Coffee Beanery, Ltd. v. WW, LLC,* --- U.S. ----, 130 S.Ct. 81, 175 L.Ed.2d 28 (2009).  The Sixth Circuit noted that "since *Wilko*, every federal appellate court has allowed for the vacatur of an award based on an arbitrator's manifest disregard of the law."  *Id*. at 419.  Several federal district courts have accepted the analysis

endorsed by the Sixth Circuit in *Coffee Beanery*.  *E.g., Fitzgerald v. H&R Block Financial Advisors, Inc.*, No. 08-10784, 2008 WL 2397636 (E.D. Mich. June 11, 2008); *Jimmy John's Franchise, LLC v. Kelsey*, 549 F. Supp. 2d 1034 (C.D. Ill. 2008).

The First Circuit has also recently recognized that the applicability of the manifest disregard ground has not yet been decided following *Hall Street*.  *See Kashner Davidson Sec. Corp. v. Mscisz*, 601 F.3d 19, 22-23 (1st Cir.2010) (declining to recall mandate to district court to vacate arbitration award in case holding arbitrator manifestly disregarded the law, recognizing discussion of vitality of manifest disregard standard following *Hall Street* in an earlier First Circuit case as "dicta," and stating that the First Circuit has "not squarely determined whether our manifest disregard case law can be reconciled with *Hall Street*").

Freecharm urges this Court to follow the interpretation of manifest disregard recognized by the Supreme Court in *Hall Street* and adopted by the Second and Ninth Circuits—that vacatur of an arbitration award on the grounds that the arbitrators exceeded there powers applies where there is manifest disregard of the law or the facts in entering the award.

### iii) The Arbitrators Exceeded Their Powers and the Arbitration Award Was Entered In A Manifest Disregard Of the Facts and the Law

In the arbitration, Freecharm presented unrefuted evidence of fraud, unrebutted expert testimony as to damages, and uncontroverted evidence as to the misrepresentations that were made by the Respondents regarding the investments solicited to Freecharm, namely the Atlas hedge funds.  Furthermore, Freecharm's account with Atlas One was at all times a non-discretionary account, and as alleged in the Amended Statement of Claim, Mr. Hegewisch and Atlas One frequently traded in equity day-trading and structured products without ever obtaining the authority to enter those transactions from the Freecharm trustee or Mr. Duclaud.  In presenting their defense that these transactions were part of the so-called "opportunistic trading

strategy" allegedly discussed with Mr. Duclaud, Mr. Hegewisch and Atlas One did not offer a single shred of evidence to show that any of the more than 60 day trades or the approximately 70 structured products traded in Freecharm's account were authorized prior to being purchased or sold.

Under Eleventh Circuit precedent, vacatur on the grounds of manifest disregard of the law is proper where there is "clear evidence that the arbitrator was 'conscious of the law and deliberately ignore[d] it.'" *B.L. Harbert Intern., LLC v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. (Ala.) 2006) (citing *Montes v. Shearson Lehman Bros., Inc.,* 128 F.3d 1456, 1461-62 (11th Cir. 1997). While "an erroneous interpretation of the law would not subject an arbitration award to reversal, a clear disregard for the law would." *Montes,* 128 F.3d at 1461 (citations omitted). "There must be some showing in the record, other than the result obtained that the arbitrators knew the law and expressly disregarded it." *Kostoff v. Fleet Securities, Inc.*, 506 F.Supp.2d 1150, 1157-58 (M.D.Fla. 2007) (citing *University Commons-Urbana, Ltd. v. Universal Constructors, Inc.,* 304 F.3d 1331, 1337 (11th Cir. 2002)).

In *Montes,* the Eleventh Circuit emphasized the facts of that case which gave rise to a finding of manifest disregard of the law.  Specifically, the Eleventh Circuit found that the arbitration panel had acted in manifest disregard of the law because (1) the arbitration panel was "flagrantly and blatantly" urged to disregard the law by the party who received a favorable ruling from the panel; (2) the arbitration panel expressly noted in its award the winning party's plea that it not follow the law; (3) there was nothing in the record to indicate that the arbitration panel did not heed the plea to disregard the law; and (4) the evidence to support the arbitration award was marginal at best. *Montes,* 128 F.3d at 1461.

It is a well-settled principle of law that uncontradicted testimony not incredible,

impeached, or discredited, involving plain simple facts capable of contradiction, must ordinarily be accepted by the trier of fact. *Alabama Title & Trust Co. v. Millsap*, 71 F.2d 518 (5th Cir., Ala. 1934); *see also Rutledge v. City of Miami*, 267 F.Supp. 885 (S.D.Fla.1967) (a trier of fact should not disregard unrebutted, sworn, affirmative, relevant testimony absent some reason why the testimony ought not to be relied upon); *The Florida Bar v. Clement*, 662 So.2d 690 (Fla., 1995) (fact-finder should not arbitrarily reject unrebutted testimony); *Izquierdo v. Gyroscope, Inc.*, 946 So.2d 115 (Fla. 4th DCA 2007) (where the testimony on the pivotal issues of fact is not contradicted or impeached in any respect, and no conflicting evidence is introduced, these statements of fact can not be wholly disregarded or arbitrarily rejected); *and Republic Nat. Bank of Miami, N.A. v. Roca*, 534 So.2d 736 (Fla. 3d DCA 1988) (finding Bank's unrebutted expert testimony regarding letters of guaranty that served to protect Bank against claims set forth against it could not be arbitrarily rejected by the trial court; therefore, judgment should have been entered in favor of bank and against director trustee for dissolved corporate buyer in action for breach of deposit agreement).

The arbitration award is completely devoid of the Panel's rationale for dismissing Freecharm's claims in their entirety. The FINRA rules state that "[t]he award may contain a rationale underlying the award." FINRA Code of Arbitration, Rule 12904(f). However, the Panel provided no rationale in this case. When arbitrators do not recite their rationale for an award, reviewing court must determine if there is a rational basis for the award. *Roberson v. Charles Schwab & Co., Inc.*, 339 F.Supp.2d 1337 (S.D.Fla. 2003).

While the FINRA rules do not require arbitration awards to set forth a decision or rationale of the facts and/or law upon which an award was entered, in this case, where Freecharm

proffered substantial evidence and testimony as to the unauthorized activity and blatant misconduct of the Respondents, much of which was unrebutted or unrefuted, at least a clarification of the arbitrators' intent for dismissing all of Freecharm's claims and not awarding any it any part of its damages is warranted.  There simply is no apparent rational basis for the Panel's dismissal of all of Freecharm's claims in the underlying arbitration.

Federal courts have remanded arbitration awards to arbitration panels for purposes "broader than a clarification of the terms of a specific remedy" and have the authority to seek a clarification of whether an arbitration panel's intent in making an award "evidence[s] a manifest disregard of the law."  *Hardy v. Walsh Manning Securities, L.L.C.*, 341 F.3d 126, (2d Cir. 2003); *Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir.1985).   The arbitration panel should be afforded such an opportunity to provide broader clarification as to the intent of their award in this case.

The arbitrators in the underlying arbitration were conscious of the clear and applicable law, set out by Freecharm in its unopposed Pre-Hearing Brief (Exhibit A, hereto) and presented at the arbitration proceedings.   Freecharm also presented unrefuted evidence and unrebutted testimony as discussed herein, including the testimony of its expert that was unrebutted.  The arbitrators' dismissal of all of Freecharm's claims was a manifest disregard of the law and facts, and the award showed be vacated by this Court.

### iv)   Evident Partiality Or Bias Existed On The Part of Some or All of the Arbitrators

The FAA permits vacatur of an arbitration award where "there was evident partiality or corruption in the arbitrators, or either of them."  9 U.S.C.§ 10(a)(2).  Alleged "evident partiality," as a basis for vacating an arbitration award under the Federal Arbitration Act (FAA) must be direct, definite and capable of demonstration rather than remote, uncertain and speculative.

*Gianelli Money Purchase Plan and Trust v. ADM Investor Services, Inc.*, 146 F.3d 1309 (11th Cir. Fla., 1998).

In the underlying arbitration, the arbitrator's disregard of substantial evidence and testimony that clearly favored Freecharm and sufficiently established its misrepresentation and fraud claims under the briefed, clear and unequivocal law can only be seen as marked impartiality or bias in the arbitration towards Freecharm and Mr. Duclaud.  It is mystifying that the unrebutted testimony given by Freecharm's expert as to the damages and excessive trading in the account, shown to be unauthorized, would result in a dismissal of all of Freecharm's claims and an award of no damages.  Accordingly, Freecharm contends that the Arbitration Award should be vacated pursuant to 9 U.S.C. §10(a)(2), on the grounds that evident bias or partiality existed.

       **v)**       **Freecharm Was Prejudiced In The Arbitration By The Respondents Egregious Withholding Of Material Documents In Discovery**

As discussed herein, Respondents withheld material exception report documents in discovery from Freecharm and produced conflicting compliance manuals in order to favor their defense in the arbitration.  Only one of these violations was sanctioned by the Panel, which imposed a monetary sanction on the Respondents for its delayed production of an alternate version of Atlas One's compliance manual.

During the hearing, it was discovered on the direct examination of one of the hedge funds' managers, Mr. Garcia-Garcia, that Atlas Capital had an Operations and Due Diligence manual for each of the hedge funds that Freecharm was invested in (the Atlas One Global Diversified Multi-Manager Fund, Ltd. and the Atlas One Special Opportunities Fund of Funds, Ltd.).  These manuals were never produced or identified by Respondents in discovery.

The FAA permits an arbitration award to be vacated where "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, **or of any other misbehavior by which the rights of any party may have been prejudiced.**"  9 U.S.C. §10(a)(3) (emphasis added).

The Panel's reluctance to consider the continuous misrepresentation of the existence of material documents in the arbitration resulted in prejudice to Freecharm.  The withholding of these documents prejudiced Freecharm in presenting its case, and the Panel refused to sanction the Respondents with a negative inference regarding these misrepresentations, a remedy afforded by the FINRA Rules[4].  Freecharm raised timely objections to all of these discovery violations.

---

[4] FINRA Rule 12511 states:

(a) Failure to cooperate in the exchange of documents and information as required under the Code may result in sanctions. The panel may issue sanctions against any party in accordance with Rule 12212(a) for:
• Failing to comply with the discovery provisions of the Code, unless the panel determines that there is substantial justification for the failure to comply; or
• Frivolously objecting to the production of requested documents or information.

(b) The panel may dismiss a claim, defense or proceeding with prejudice in accordance with Rule 12212(c) for intentional and material failure to comply with a discovery order of the panel if prior warnings or sanctions have proven ineffective.

FINRA Rule 12212 states:

(a) The panel may sanction a party for failure to comply with any provision in the Code, or any order of the panel or single arbitrator authorized to act on behalf of the panel.

Unless prohibited by applicable law, sanctions may include, but are not limited to:
• Assessing monetary penalties payable to one or more parties;
• Precluding a party from presenting evidence;
• Making an adverse inference against a party;
• Assessing postponement and/or forum fees; and
• Assessing attorneys' fees, costs and expenses.

(b) The panel may initiate a disciplinary referral at the conclusion of an arbitration.

(c) The panel may dismiss a claim, defense or arbitration with prejudice as a sanction for material and intentional failure to comply with an order of the panel if prior warnings or sanctions have proven ineffective.

FINRA Code of Arbitration Procedure, Rules 12212 and 12511.

Accordingly, Freecharm's motion to vacate the Award should be granted on these grounds pursuant to 9 U.S.C 10(a)(3).

### vi) This Court May Review Evidence That Would Support Freecharm's Motion to Vacate

When a petition to vacate an arbitration award alleges facially sufficient grounds for relief, the trial court must, at least, hold a limited evidentiary hearing to allow the movant to submit evidence to establish its claim. *See O.R. Sec. v. Professional Planning Assocs.,* 857 F.2d 742 (11th Cir.1988).  In support of its Motion, Freecharm files separately the transcripts of the underlying arbitration proceedings for this Court to review.

### B.   CONFIRMING THE AWARD WOULD VALIDATE FRAUD AND THEREFORE IS CONTRARY TO PUBLIC POLICY

Given the fraud perpetrated by the Respondents on Freecharm that was clearly demonstrated by unrefuted evidence at the arbitration hearing, the arbitrators exceeded their powers in entering the award and enforcing the award would be contrary to public policy.

An arbitration award will be vacated on public policy grounds only if the award is violative of some explicit public policy and this policy must be "well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Paperworks Int'l Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 43, 108 S.Ct. 364 (1987) (quotations omitted).  The test for whether an award violates public policy is "whether the award offends some basic principle of justice or morality or threatens to frustrate some urgent public necessity."  *Grigsby & Associates, Inc. v. M Securities Inv., Inc.*, Not Reported in F.Supp.2d, 2008 WL 2959730 (S.D.Fla. 2008) (quoting *Pebbles v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 431 F.3d 1320, 1326 (11th Cir.2005)); c*f. Rintin Corp., S.A. v. Domar, Ltd.,* 476 F.3d 1254, 1258 (11th Cir.2007) (applying Florida law

which also considers violations of public policy as grounds for vacating an arbitration award).

Florida courts have often interpreted the public policy and legislative purpose behind Chapter 517 of the Florida Statutes, the Florida Securities Investor Protection Act ("FSIPA"). As one Florida court held, the "legislative purpose of the Florida Securities and Investor Protection Act [, which,] as its title makes clear, [was designed] to protect the public from fraudulent and deceptive practices in the sale and marketing of securities." *Mehl v. Office of Financial Regulation*, 859 So.2d 1260 (Fla. 1st DCA 2003) (citing *Arthur Young & Co. v. Mariner Corp.,* 630 So.2d 1199, 1203 (Fla. 4th DCA 1994))[5].

The Amended Statement of Claim contained a count for violations of section 517.301 of the Florida Statutes (the FSIPA), and the entire claim arose out of numerous transactions in securities.  Enforcing the arbitration award would be contrary to the legislative purpose of the FSIPA, which was to protect the investing public from fraudulent and deceptive practices in the securities industry.  The evidence and testimony in this case showed that the Respondents made several misrepresentations and omissions of material fact to Freecharm and Mr. Duclaud in connection with the purchase and sale of securities.  As discussed herein, the fraud committed by the Respondents included the alteration of account forms, an aberrant violation of federal and state law and the governing rules of the securities industry.  Enforcing an arbitration award that

---

[5] Early Florida cases articulated the public policy of protecting the general public from investment fraud.  *See Robson Link & Co. v. Leedy Wheeler & Co.*, 18 So. 2d 523, 531 (Fla. 1944):

> The expert ability required to properly analyze the financial condition of industrial and other corporations and reflect it properly in a statement, and the ability requisite to the proper analysis of such statements, demand that a high standard of business ability be possessed by those engaged in buying and selling bonds and stocks, and that **a high standard of business ethics be observed by dealers in securities for the protection of** each other, of **private investors, and of the general public**, which furnishes the large majority of ultimate purchasers; the enactment of the law establishing the Florida Securities Commission, whose functions were later transferred to the Office of Banking and Finance, recognizes this principle of reasonable responsibility by dealers to the investing public and **makes it a part of the public policy of Florida**.

(Emphasis added).

dismissed an investor's claims in their entirety in light of the egregious misrepresentations and blatant fraud committed against it would be contrary to the established public policy of protecting the investing public and a miscarriage of justice. The Award should accordingly be vacated.

### C.     GROUNDS FOR MODIFYING AN ARBITRATION AWARD UNDER 9 U.S.C. § 11

Pursuant to the FAA, a party may petition a federal district court to modify an award under the following circumstances

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.  "The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties." *Id*.

Freecharm contends that arbitrators entered the Award not upon the law and facts that were submitted to them during the Arbitration Proceedings.  The Award disregarded the substantial evidence of misrepresentation and fraud presented by Freecharm at the Arbitration Hearing, including unrebutted expert testimony that demonstrated a thorough analysis of excessive trading, excessive commissions (much of which was undisclosed to the customer), severe over-concentration in the Respondents' own financial products, and damages.

The Award was entered arbitrarily on matters not submitted to the Panel, and should be modified in the interest of justice.

<u>C</u>ONCLUSION

The evidence, testimony, and unequivocal law introduced in the underlying arbitration did not merit the arbitrary and irrational Award that was rendered.  For the reasons discussed in Freecharm's Motion and this Memorandum of Law, Petitioners/Respondents' motion to confirm the Award should be denied, and the Award should be vacated pursuant to 9 U.S.C. §10, or modified pursuant to 9 U.S.C. §11.

Respectfully submitted,
**JONES & ADAMS, P.A.**
9155 South Dadeland Blvd. #1506
Miami, Florida 33156
Telephone: (305) 270-8858
Facsimile: (305) 270-6778
Email: matthew@jones-adams.com

By:    /s/ Matthew L. Jones
Matthew L. Jones, Esq.
Florida Bar No.: 909335

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 4, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/ Matthew L. Jones</u>
Matthew L. Jones, Esq.


**<u>Service List</u>**
Greenberg Traurig, P.A.
**Holly R. Skolnick, Esq.**
**Courtney B. Green, Esq.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131-3238
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
skolnickh@gtlaw.com