Case No.: 10-mc-24539-MGC

# EXHIBIT A

FINRA DISPUTE RESOLUTION

**IN THE MATTER OF ARBITRATION BETWEEN:**

FREECHARM LIMITED,

       Claimant,

FINRA Case No. 09-01002

vs.

ATLAS ONE FINANCIAL GROUP, LLC,
ATLAS WEALTH HOLDINGS CORPORATION,
ATLAS ONE CAPITAL MANAGEMENT, LLC,
GUSTAVO HEGEWISCH,
JORGE GARCIA-GARCIA,
FLAVIO A. LOBATO,

       Respondents.
_____/

## CLAIMANT'S PRE-HEARING BRIEF

As set forth in its Amended Statement of Claim, Claimant Freecharm Limited ("Freecharm") is a foreign trust structure established by its grantor and beneficiary, Jose Antonio Duclaud ("Duclaud").

Freecharm has set forth claims for violations of the Florida Securities Investor Protection Act (§517.301, et seq.) for unsuitability, unauthorized trading, churning, and misrepresentation; fraud; breach of fiduciary duty; gross negligence; and negligent supervision, against the Respondents, Atlas One Financial Group, LLC ("Atlas One"), Atlas Wealth Holdings Corporation, Atlas One Capital Management, LLC, Gustavo Hegewisch, Jorge Garcia-Garcia, and Flavio Lobato (hereinafter referred to collectively as "Respondents").

The following Pre-Hearing Brief addresses the legal issues, rules and case law applicable to this arbitration.

FINRA CASE NO. 09-01002

## ***VIOLATIONS OF §517.301 OF THE STATUTES***

The Florida Securities Investor Protection Act (FSIPA) prohibits a person

> [I]n connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security . . .
>
> 1. To employ any device, scheme, or artifice to defraud;
>
> 2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
>
> 3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

§ 517.301, Fla. Stat.

Referred to as the anti-fraud provision of the FSIPA, several causes of action fall under § 517.301, Fla. Stat., including unsuitable trading, unauthorized trading, excessive trading, and misrepresentation.

### A.     Unsuitability

As with churning, unauthorized trading and misrepresentation, unsuitable trading is a violation of the anti-fraud provisions of the securities acts. *Clark v. John Lamula Investors, Inc.*, 583 F.2d 594, 600 (2d Cir. 1978), *In re Olde Discount Corp.*, 67 S.E.C. Docket 2045, 1998 WL 575171 (S.E.C. 1998). It should be obvious that failure to disclose such information would be material. It has been so held. *Banca Cremi v. Alex, Brown & Sons, Inc.*, 132 F.3d 1017 (4th Cir. 1997).

The unsuitability doctrine is premised on New York Stock Exchange Rule 405 ("Rule 405")(also referred to as the "Know Your Customer Rule")[1] and the National Association of

---

[1] Rule 405 provides, in pertinent part:

Securities Dealers Rules of Fair Practice.[2] *See e.g. O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 897 (10th Cir. 1992) (Colo.).

Claimants who allege a claim of unsuitability must establish five elements: (1) the securities purchased were not suited to the buyer's needs; (2) the defendant knew or reasonably believed the securities were not suited to the buyer's needs; (3) the defendant recommended or purchased the unsuitable securities for the buyer anyway; (4) the defendant made material misrepresentations with scienter (or, owing a duty to the buyer, failed to disclose material information) relating to the suitability of the securities; and (5) the buyer justifiably relied to his or her detriment on the defendant's fraudulent conduct. *See Banca Cremi, S.A., et al. v. Alex Brown & Sons, Inc. et al.*, 132 F.3d 1017, 1032 (4th Cir.1997); *Brown v. E.F. Hutton Group, Inc. et al.*, 991 F.2d 1020, 1031 (2d Cir.1993); *National Union Fire Ins. Co. v. Woodhead*, 917 F.2d 752, 757 (2d Cir.1990); *Pits, Ltd. v. American Express Bank Int.*, 911 F.Supp. 710, 718 (S.D.N.Y.1996).

Scienter may be inferred by finding the defendant knew or reasonably believed the securities were unsuited to the needs of the particular investor, misrepresented or failed to disclose the unsuitability of the securities, and nevertheless proceeded to recommend or purchase the securities. *See Brown*, 991 F.2d at 1031. *See generally Weiner v. Quaker Oats Co.*, 129 F.3d 310, 315 (3d Cir.1997); *Kline v. First Western Government Securities, Inc.*, 24

---

> Every member organization is required ... to (1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization.

New York Stock Exchange Rule 405.

[2] Article 3, § 2 of the Rules of Fair Practice states:

> In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such a customer upon the basis of the facts, if any, disclosed by such customer as to his other securities holdings and as to his financial situation and need.

N.A.S.D., Rules of Fair Practice, Article 3, § 2.

F.3d 480, 487 (3d Cir.), cert. denied, 513 U.S. 1032, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994).

An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth.[3] *Hunt v. Alliance North American Gov't Income Trust, Inc.*, 159 F.3d 723, 730 (2d Cir.1998); *Banca Cremi, S.A.*, 132 F.3d at 1027; *Harsco Corp. v. Segui, et al.*, 91 F.3d 337, 342 (2d Cir.1996); *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 79 F.3d 878, 886 (9th Cir.1996); *Harrison v. Dean Witter Reynolds, Inc.*, 79 F.3d 609, 618 (7th Cir.1996).

It has also been held that prior trading experience is not relevant to a determination of suitability in the accounts. As the S.E.C. stated in *In re Larry Ira Klein*, 63 S.E.C. Docket 52, 1996 WL 59776 (1996), prior transactions by the customer are irrelevant in a suitability determination. (citing *In re Douglas Jerome Hellie*, 50 S.E.C. Docket 611, 613 (1991). The NASD took a similar position in a disciplinary action against a registered representative. *In re Wayne B. Vaughan*, 1998 WL 1084552 at *5 (NASDR Oct. 22, 1998).

Even if Claimant had been a sophisticated investor, this would not justify unsuitable trading. In *In re Dale E. Frey*, 79 S.E.C. Docket 1727, 2003 WL 245560 at *22 (S.E.C. ALJ 2003), the Administrative Law Judge said:

> Dean's history of trading showed that he had engaged in options trading in other accounts and that he understood the nature of the security and the risks that accompanied it. However, prior trades are irrelevant when trying to determine the issue of suitability in this case.

It has also been noted that simply because an individual is successful or sophisticated in one field of business does not necessarily mean that he is an investor sophisticated enough

---

[3] In the instant action Claimant alleges that it "placed [its] full faith and trust in Respondents to handle its funds. Respondents were in possession of superior skill and knowledge with respect to the investments [and] securities upon which Freecharm justifiably relied upon. Respondents owed Freecharm a fiduciary duty not to abuse that superior skill and knowledge." Amended Statement of Claim at ¶ 140.

to understand all of the risks of a particular investment. *Clark v. John Lamula Investors, Inc.*, 583 F.2d 594 (2d Cir. 1978); and *Cruse Equitable*, 678 F. Supp. 1023 (S.D.N.Y. 1987).

Nor can the wealth of an investor control suitability. As the judge in *Frey* later said: "[A] customer's wealth and sophistication does not give a registered representative license to disregard the customer's investment objectives." He then quoted *In re Joseph Dambro*, 54 S.E.C. Docket 968, 973 (1993); "Suitability is determined by the appropriateness of the investment for the investor, not simply by whether the salesman believes that the investor can afford to lose the money invested." *Id.* Wealth alone does not connote a sophisticated investor.

In their Answer and Affirmative Defenses, Respondents have tried to justify their actions by saying that the Claimant wanted to accept more risk to earn higher returns. This however, was inconsistent with Claimant's investment goals of moderate risk exposure with long-term growth. The S.E.C. has long held that the desires of the client do not control suitability or justify a registered representative's conduct in violating those goals. In *In re James B. Chase*, 79 S.E.C. Docket 2251, 2003 WL 917974 at *4 (2003), the Commission said:

> The test for whether Chase's recommendations were suitable is not whether Howvath acquiesced in them, but whether his recommendations were consistent with her financial situation and needs.

*In re James B. Chase* simply reaffirmed the position set forth earlier by the Commission earlier in *In re Charles W. Eye*, 50 S.E.C. Docket 851, 1991 WL 286409 at *4 (1991), the Commission said:

> [R]egardless of whether Ramini appeared willing, or even eager, to pursue "growth" as Eye understood it, it was Eye's duty to advise her against that pursuit to the extent that it was incompatible with her acknowledged needs.

(citing with approval, *In re Eugene J. Erdos*, 47 S.E.C. 985, 988-989 (1983), aff'd *Erdo v. S.E.C.*, 742 F.2d 507 (9th Cir. 1984).

Respondents have alleged that unsuitable transactions were later ratified by the Claimant. However, in *In re Frey*, 79 S.E.C. Docket 1727, 2003 WL 245560 at *19 (S.E.C. 2003) said: "The Commission has repeatedly held that 'ratification of a transaction after the fact does not mean trades were properly authorized.' " *See also, In re Justine Susan Fischer*, 51 S.E.C. Docket 2414, 2421, 1998 WL 484111 (S.E.C. 1998).

### B.    Churning

Churning of an investment account occurs when a securities broker causes a customer's account to be traded with too great a frequency in light of the customer's financial needs, resources, or investment objectives, for the purpose of generating commissions. *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 890 n. 1 (5th Cir.1979).

There are three requisite elements to a churning claim:

1) The broker must have exercised control of the trading activity in the account either by written trading authorization or *de facto* discretionary authority (i.e. the customer routinely agreed to every trade recommended by the broker);

2) The broker engaged in excessive trading contrary to the customer's investment objectives and risk tolerance; and

3) The broker acted with scienter, the intent to defraud, or with willful and reckless disregard for the investor's interest.

*Mihara v. Dean Witter & Co.*, 619 F.2d 814 (9th Cir. 1980); *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 639 F. Supp. 1391 (S.D.N.Y. 1986); and *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 324 (5th Cir.1981).

Factors relevant to the "control" element of a churning claim include the discretion given to the broker-dealer, the age education, intelligence, and business and investment experience of the client, the relationship between client and broker, and the reliance placed by

the customer on his broker. *Zaretsky v. E.F. Hutton & Co.*, 509 F. Supp. 68, 74 (S.D.N.Y. 1981). However, it is more often the case that control is established when a *de facto* discretionary account is created. This occurs when an investor evidences trust and confidence in his broker by following his advice with reasonable regularity, but has not executed a discretionary trading agreement. *Newberger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1069 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035 (1978).

In proving the second element of a churning claim, that trading was excessive, it is not necessary for a claimant to set out that each and every transaction asserted was excessive, since a churning claim is based on the overall amount of trading in a customer's account over a period of time and not a particular trade or group of trades. *Frota v. Prudential Bache Securities, Inc.*, 639 F. Supp. 1186 (S.D.N.Y. 1986). Churning of an account is usually measured by the account's turnover. The turnover ratio is the ratio of the total cost of purchases made for an account during a given period of time to the amount invested. *Newberger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1069 (2d Cir. 1977).

Total turnover is the ratio of purchased securities in the account to the net value of the account. It is calculated by dividing the total purchases in the account by the average account equity. Equity is the amount that would be realized by the customer if the account's assets were liquidated. Total turnover is annualized by dividing the total number of months in the alleged churning period and then multiplying that number by twelve. Other statistical methods used to determine whether churning occurred in an account is the *break even ratio*, which determines the minimum rate of return necessary to break even to cover the costs of doing business; *cost to equity ratio*, which is total commissions to average equity, annualized; and *total cost to equity ratio*, which is commissions, margin interest, and fees to average equity, annualized.

The third element of a churning claim, scienter, is often easily found. As one court stated, "Churning, in and of itself, may be a deceptive and manipulative device under Section 10(b), the scienter required by Section 10(b) being implicit in the nature of the conduct." *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983). Scienter is clearly present where a broker, having control over a customer's account, trades excessively for the purpose of generating commissions, in disregard for the client's interest. *Mihara v. Dean Witter & Co.*, 619 F.2d 814 (9th Cir. 1980).

Reckless conduct will also satisfy the scienter requirement. When there is a fiduciary duty owed to the defrauded party, the showing of recklessness, rather than the stricter standard of proof of an intent to defraud, is sufficient. *In the Matter of Inserra, et al.*, SEC Admin. Proc. File No. 3-6691, Opinion of Admin. Law Judge, Fed. Sec. L. Rep. (CCH) ¶84,334 at 89,499 (Sept. 30, 1988). Reckless conduct is conduct that is highly unreasonable and that represents an extreme departure from the standard of ordinary care to the extent that the danger was either known to the broker or so obvious that the broker must have been aware of it. *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 44–47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039 (1978).

One court, in delineating the three elements of a churning claim, recognized that churning is a "short hand expression for a type of fraudulent conduct in a broker-customer relationship where the broker overtrades a relying customer's account to generate inflated sales commissions." *Sheldon Company Profit Sharing Plan & Trust v. Smith*, Fed. Sec. L. Rep. (CCH) ¶ 97,736 at 97,491 (U.S.D.C. W.D. Mich. June 4, 1993) (*citing Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990). Relying on *Craighead*, the district court in *Sheldon Company* noted that excessive trading is generally thought to exist by courts and commentators **where there is an annual turnover rate in an account in excess of six**. *Id.*

A customer can recover commissions generated if all the elements of churning are proved, **<u>even if the trading resulted in a net profit</u>**. *See Mihara v. Dean Witter & Co.*, 619 F.2d 814 (9th Cir. 1980); *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206 (8th Cir. 1990); *Nesbit v. McNeil*, 896 F.2d 380 (9th Cir. 1990) (churning causes two distinct types of damages: amount of excess commissions and decline in account value; trading profits will not offset commission charges); *McGinn v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 736 D.2d 1254 (8th Cir. 1984); *Miley v. Oppenheimer*, 637 F.2d 318, 327 (5th Cir. 1981); *Kaufman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 464 F. Supp. 528 (D. Md. 1978). "In order to approximate the trading losses caused by the broker's misconduct, it is necessary to estimate how the investor's portfolio would have fared in the absence of such misconduct." *Miley*, 637 F.2d 318, 328. "The investor would have paid less commissions and the portfolio would have had a greater value had the broker not committed the churning violation." *Id.* at 326.

### C.     Misrepresentation

A misrepresentation of the inherent risks of a particular investment vehicle or a failure to disclose these risks when a broker knew or should have known that the customer would have relied on the misrepresentation or omission is an actionable offense under state and federal securities laws. Since most customers must rely on the representations of their brokers because they often do not have the ability or resources to verify these representations or have the accessibility to information that the broker has, brokers are responsible for misrepresenting material facts or failing to disclose them to their customers. *Roby v. Corporation of Lloyd's*, Fed. Sec. L. Rep. (CCH) ¶ 97,458 at 96,555 (U.S.C.A. 2d Cir. June 2, 1993).

The misrepresentation or omission must be material to the investment decision and must be more than just a failure to state an incidental fact. The United States Supreme Court has set forth the following test of materiality:

> [A fact is material if there is a] substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Basic Inc. v. Levinson*, 485 U.S. 224, 108 S. Ct. 978, 983 (1988); TSC Industries, *Basic Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

It must also be shown that the misrepresentation complained of caused the injury suffered. To establish "causation," the claimant must show "both loss causation—that the representations or omissions caused the economic harm—and transaction causation—that the violations in question caused the [claimant] to engage in the transaction in question." *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 380 (2d Cir. 1974), *cert. denied*, 421 U.S. 976 (1975); *Bennet v. United States Trust Company*, 770 F.2d 308, 313 (2d Cir. 1985).

Finding causation from a broker's misrepresenting statements can turn on the degree of specificity of the particular statement. Thus, while a broker's optimistic statements about the expected performance of the stock market or a particular stock might be considered nonactionable puffery, the broker's degree of specificity in making the statement can convert a general prediction to an actionable misrepresentation. For instance, one court held that "the inclusion of a specific percentage" put the broker's "misrepresentation in a different category from those [boasting of the broker's prowess and likely success]." *Newman v. L.F. Rothschild, Utenberg, Towbin*, 662 F. Supp. 957, 959 (S.D.N.Y. 1987) (broker's guarantee of no-risk 20-30% return was actionable misrepresentation under 10b-5).

As alleged in the Statement of Claim and will be explored further at the Final Hearing, in touting the Atlas One House Funds to Duclaud, Respondents Hegewisch, Garcia-Garcia

and Lobato misrepresented, among other things, that the Funds were conservative when they were in fact volatile, and that the GLOBAL and LATAM Funds had positive track records of six and four years, respectively, when they actually had none. These are just the sort of misrepresentations and omissions that are actionable under the securities laws.

Lastly, an investor must have justifiably relied on the broker's misrepresentations or omissions. The determination of whether an investor's reliance was justified requires a factually intensive analysis that balances the following factors: (1) the sophistication and expertise of the customer in financial and security matters; (2) the existence of a long standing business or personal relationship between the customer and the broker; (3) the customer's access to relevant information; (4) the existence of a fiduciary duty owed by the broker to the customer; (5) concealment of fraud by the broker; (6) whether the customer initiated the stock transaction or sought to expedite the transaction; and (7) the generality or specificity of the misrepresentations. *Brushi v. Brown*, Fed. Sec. L. Rep. (CCH) par. 94,517 at 93,291 (11th Cir. July 12, 1989); *Kennedy v. Josephal & Co.*, 814 F.2d 798 (1st Cir. 1987); *Straub v. Vaisman & Co.*, 540 F.2d 591 (2d Cir. 1976). Reliance is presumed in fraud cases involving omissions; all that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F.Supp.2d 1213 (S.D.Fla. 2009) (March 30, 2009).

Here, it will be shown that Claimant did rely on the Respondents' misrepresentations and omissions to its detriment by, among other things, allowing a large part of the Freecharm portfolio to be invested in the risky Atlas House Funds, and being unable to prevent or end the

excessive, unauthorized intraday trading that went on in the account due to Respondents' concealment of their activity.

### D.  Unauthorized Trading

Unauthorized trading occurs when trades are executed in a customer's account without obtaining approval beforehand, either orally or by written discretionary authority granted to the broker or to a third-party.

Unauthorized trading requires an accompanying misrepresentation or non-disclosure. *Rowe v. Morgan Stanley Dean Witter*, 191 F.R.D. 398 (D.C.N.J. 1999); *Arioli v. Prudential-Bache Sec., Inc.*, 792 F. Supp. 1050, 1062 (E.D. Mi. 1992); and *Pross v. Baird, Patrick & Co., Inc.*, 585 F. Supp. 1456 (S.D.N.Y. 1984). It has been held that affirmative misrepresentations need not be alleged in setting forth a claim for unauthorized trading; it is sufficient that a customer allege material omissions, such as when the broker trades in an account without first obtaining the customer's authority or without telling him beforehand – thereby omitting the material fact. *Cruse v. Equitable Securities of New York, Inc.*, 678 F. Supp. 1023 (S.D.N.Y. 1987). As the Court in *Village of Arlington Heights v. Poder*, 712 F.Supp. 680, 683 (N.D. Ill. 1989) put it, "No omission could be more material than [to inform the customer of unauthorized trading.]."

Brokers have an obligation to inform their customers of all trades made in their accounts. It has been held under basic principles of agency laws that a broker's duty to a customer encompasses the duty to inform the customer of the right to reject unauthorized trades, and that the failure to do so constitutes a breach of that duty as a matter of law. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng*, 901 F.2d 1124 (Ct. App. D.C. 1990). While Respondents may argue that the Claimant acquiesced to the trades, or possibly ratified the trades, the Court of Appeals in *Cheng* ruled that "[r]atification occurs only when the

customer, **with full knowledge of the facts**, manifests his intention to adopt the unauthorized transaction." *Id.* (emphasis added).

## *BREACH OF FIDUCIARY DUTY*

Respondents are agents and fiduciaries of the Claimant. Under Florida law, a securities broker owes a fiduciary duty of care and loyalty to an investor. *In re Dupree*, 336 B.R. 506 (Bankr. M.D. Fla. 2005). An agent or fiduciary has certain duties that include: (1) the duty to act only in the best interest of the principal and not have an interest conflicting with the principal; (2) the duty to obey; (3) the duty to inform his principal of all information the agent knows about the transaction; and (4) the duty to act only as authorized. It is alleged that Respondents, including broker Hegewisch, violated all these duties. Failure to inform the Claimant of these breaches of duty is a material misrepresentation. *Messer v. E.F. Hutton & Co.*, 847 F.2d 673 (11th Cir. 1988); *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042 (11th Cir. 1987). Such failure to disclose breaches of fiduciary duties is securities fraud. *See e.g. Hughes v. Securities and Exchange Commission*, 85 U.S. App. D.C. 56, 174 F.2d 969 (1949).

Respondents were acting as the agent and fiduciary of the Claimant in handling its accounts. Atlas One is acting as the agent of the Claimants and Hegewisch, Garcia-Garcia and Lobato as their sub-agents. A sub-agent owes the same fiduciary duties to the ultimate principal, the Claimants, as does the agent Atlas One. As outlined above, under Florida common law of agency, an agent or fiduciary has certain duties, including: (1) the duty to act only in the best interest of the principal and not have an interest conflicting with the principal; (2) the duty to obey; (3) the duty to inform his principal of all information the agent knows about the transaction; and (4) the duty to act only as authorized. The evidence shows Atlas One, Hegewisch, Garcia-Garcia and Lobato violated all these duties. Hegewisch engaged in

both unauthorized trading and purchases of unsuitable securities, both breaches of his fiduciary duty. Further, he did not inform the Claimant of these breaches.

Breach of fiduciary duty under Florida law makes the agent liable to the principal of the losses incurred as a result of breach of fiduciary duty. Therefore, Hegewisch is liable to the Claimant for his breaches. Likewise, Atlas One is liable to the Claimant for these breaches because an agent is responsible to his principal for the violation of a fiduciary duty by the sub-agent.

### ***FRAUD***

To prevail on a claim under Florida law for fraud in the inducement, a party must prove: (1) a misrepresentation of material fact was made; (2) the party knew the misrepresentation was false; (3) the misrepresentation was intended to induce reliance; and (4) the party suffered injury based on justifiable reliance. *Oglesbee v. IndyMac Financial Services, Inc.*, 686 F. Supp. 2d 1313 (S.D. Fla. 2010). *See also Witt v. La Gorce Country Club, Inc.*, 35 So. 3d 1033 (Fla. 3d DCA 2010).

It is fundamental that a representation that is the basis for a claim of fraud must concern a a fact material to the transaction in which the complaining party was defrauded. *Biscayne Boulevard Properties, Inc. v. Graham*, 65 So. 2d 858 (Fla. 1953); *First Nat. Bank of Stuart v. Jackson*, 267 So. 2d 697 (Fla. 4th DCA 1972); *Morris v. Ingraffia*, 154 Fla. 432, 18 So. 2d 1 (1944); *Camardella v. Courtright*, 126 Fla. 536, 171 So. 225 (1936); and *Columbus Hotel Corp. v. Hotel Management Co.*, 116 Fla. 464, 156 So. 893 (1934). The misrepresentation must be in reference to some material matter unknown to the other party, either because he did not examine it or had no opportunity to become informed, or because his or her entire confidence was reposed in the defendant. *Robson Link & Co. v. Leedy Wheeler & Co.*, 154 Fla. 596, 18 So. 2d 523 (1944). In addition to requirement that the misrepresentation

be material, the claimant must have justifiably relied on the misrepresentation. *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297 (Fla. 1st DCA 1999); *Hillcrest Pacific Corp. v. Yamamura*, 727 So. 2d 1053 (Fla. 4th DCA 1999).

Lastly, fraud cannot form the basis for recovery of damages unless the damages directly arise from the fraud and are causally connected to it. *Simon v. Celebration Co.*, 883 So. 2d 826, 192 Ed. Law Rep. 996 (Fla. 5th DCA 2004). The claimant must suffer some pecuniary loss or injury as the natural consequence of the conduct induced by the misrepresentation. *Casey v. Cohan*, 740 So. 2d 59 (Fla. 4th DCA 1999).

### ***GROSS NEGLIGENCE***

One of the elements of actionable negligence is the existence of a duty owed by the person charged with negligence to the person injured. *Modlin v. City of Miami Beach*, 201 So. 2d 70 (Fla. 1967); *City of Miami Beach v. Dickerman Overseas Contracting Co., U.S.A.*, 659 So. 2d 1106 (Fla. 3d DCA 1995). Under Florida law, a securities broker owes a fiduciary duty of care and loyalty to an investor. *In re Dupree*, 336 B.R. 506 (Bankr. M.D. Fla. 2005).

To recover on a negligence claim, the plaintiff needs to prove that

(1) the defendant owed him or her a legal duty;

(2) the defendant breached that duty;

(3) the plaintiff suffered injury as result of that breach; and

(4) the injury caused damage.

*Kayfetz v. A.M. Best Roofing, Inc.*, 832 So. 2d 784 (Fla. Dist. Ct. App. 3d Dist. 2002), review denied, 851 So. 2d 728 (Fla. 2003).

Gross negligence is the absence of the exercise of "slight care" and is the omission or commission of an act with a conscious indifference to consequences so far as other persons are concerned. *Faircloth v. Hill*, 85 So. 2d 870 (Fla. 1956); *City of Sebring v. Avant*, 95 Fla.

Case 1:10-mc-24539-MGC Document 6-1 Entered on FLSD Docket 01/04/2011 Page 17 of 19

FINRA CASE NO. 09-01002

960, 117 So. 383 (1928). It is that course of conduct that a reasonable and prudent person would know would probably and most likely result in injury to persons and property. *Clements v. Deeb*, 88 So. 2d 505 (Fla. 1956); *Bridges v. Speer*, 79 So. 2d 679 (Fla. 1955); *Farrell v. Fisher*, 578 So. 2d 407 (Fla. 4th DCA 1991).

To hold a party liable under Florida law for gross negligence, the court must find that the defendant had knowledge of the existence of circumstances that constitutes a "clear and present danger" and yet still undertook a conscious, voluntary act or omission that was likely to result in injury. *Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373 (11th Cir. 2000). It has been held that gross negligence can violate professional or legal duties. *Fleetwood Homes of Florida, Inc. v. Reeves*, 833 So. 2d 857 (Fla. 2d DCA 2002), review granted, 852 So. 2d 861 (Fla. 2003) and decision quashed, 889 So. 2d 812 (Fla. 2004).

## *NEGLIGENT SUPERVISION*

FINRA and SEC Rules require each broker-dealer to adopt a system to supervise their registered representatives to prevent them from violating the state and federal securities acts and the FINRA and NYSE Rules of Fair Conduct. Not only must the broker-dealer adopt these rules, but must also systemically enforce them. Hegewisch fraudulently or grossly negligently violated the Securities Acts and the NYSE and FINRA Rules. As a result, he is personally liable to the Claimants.

However, Respondents Atlas One, Atlas One Capital Management, LLC and Atlas Wealth Holdings are also jointly and severally liable for Hegewisch, Garcia-Garcia, and Lobato's gross negligence and fraud. This liability rests on two separate theories. Atlas One, as seen above, has a common law duty to supervise its sub-agents. It is responsible to the Claimants for all losses caused by its sub-agent. This obligation to supervise requires Atlas

One to establish a system of supervision which will detect when its agents are making unauthorized transactions and unsuitable trades. Further, Atlas One must see that the system is applied in actual practice. Failure to supervise leads to direct liability on Atlas One.

This duty to supervise has been recognized by the courts, and its breach has been held to impose civil liability on the broker-dealer under the federal securities acts. *See e.g. Zweig v. Hearst Corp.*, 521 F.2d 1129, 1134-35 (9th Cir.) *cert. denied*, 423 U.S. 1025 (1975); *Paul F. Newton & Co. v. Texas Commerce Bank*, 630 F.2d 111, 112 (5th Cir. 1980); *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir.), *cert. denied*, 449 U.S. 1011 (1980).

Atlas One's failure to supervise Hegewisch in this case is, at a minimum, simple negligence. The Claimant believes that the evidence will show that both Hegewisch's and Atlas One's actions rise to the level of gross negligence.

Atlas One is also indirectly liable to the Claimants on the theory of respondeat superior. This is vicarious liability requiring no fault on the part of Atlas One.

Dated: September 21, 2010

Respectfully submitted,

W. Steven Adams, Esq.
Florida Bar No.: 930164
Matthew L. Jones, Esq.
Florida Bar No.: 909335

**JONES & ADAMS, P.A.**
9155 South Dadeland Boulevard
Suite 1506
Miami, Florida 33156
Telephone: (305) 270-8858
Facsimile: (305) 270-6778
Email: steven@jones-adams.com
*Attorneys for Claimant Freecharm Limited*

FINRA CASE NO. 09-01002

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic mail and U.S. mail on this 21st of September, 2010 to the below Service List:

### Service List

**Lisa Lasher**
Senior Case Administrator
FINRA Dispute Resolution
Southeast Regional Office
Boca Center Tower 1
5200 Town Center Circle, Suite 200
Boca Raton, FL 33486-1015
Fax: (301) 527-4868
*FL-main@finra.org*
*Lisa.lasher@finra.org*

**Holly R. Skolnick**
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
Fax: (305) 579-0717
*SkolnickH@gtlaw.com*